UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

==============================  :
UNITED STATES OF AMERICA,       :
                                :
                                :
                                :
— *versus* —                    :
                                :
                                :   S1 07-cr-01160 (PKC)
ASHLEY DIXON,                   :
                                :
        Defendant-Movant.       :
==============================  :

## Memorandum of Law and Facts

<u>A. Facts</u>

On or about November 16th, 2007, Defendant Ashley Dixon was arrested by officers of the New York Police Department for unlawful possession of a firearm, *viz.*, a CZ-52 7.62 x 25 semi-automatic handgun, along with several undischarged shells.

On that date the police had received a tip that a handgun was being illegally held in apartment 2 at 741 St. Ouen Street, Bronx, NY.  And, furthermore, that the Defendant (Dixon) lived there with his mother.

The police went to the apartment and his mother answered the doorbell.  According to the police[1] she consented to a search of the apartment (the police not having secured a search warrant).  The police entered the room where the gun was supposedly being held, and the accused's mother lifted up the mattress on the bed revealing the subject weapon.

---

[1] This version of the events taken from the sworn compaint filed in 07-mag-2021, by Police Officer Edgardo Bardot.

The police then went into the living room and confronted Mr. Dixon with the gun and he acknowledged that it belonged to him and, that his mother was unaware of its presence. Transported to the 48th Precinct, the Defendant executed a *Miranda* waiver form and reiterated that the gun was his, and that his mother held no culpability in this matter.

On December 19th, 2007, Mr. Dixon was indicted in 07-cr-01160 (PKC), in a one count indictment charging him with violating the felon in possession statute, 18 U.S.C. § 922(g)(1). The basis for this was the fact that he had previously been charged with and convicted of several offenses, including a conviction for Criminal Possession of a Weapon in the Third Degree on April 18th, 2007, in Bronx County Supreme Court. N.Y. Penal L. § 265.02.

On or about April 29, 2008 a superseding indictment was handed down by the Grand Jury. S1 07-cr-01160 (PKC). This indictment contained seven separate counts, and added a second defendant, Christopher Sinclair:

> Count 1: Conspiracy to possess with intent to distribute 50 grams or more
> of "Crack": Dixon and Sinclair
>
> Count 2: Possession of firearms in furtherance of conspiracy as set forth in
> Count 1: Dixon and Sinclair
>
> Count 3: RICO violation (robbery of a jewelry store in the Bronx):
> Sinclair
>
> Count 4: RICO and conspiracy to rob jewelry store in the Bronx: Sinclair
>
> Count 5: Use of a firearm in the attempted robbery of jewelry store in the
> Bronx: Sinclair
>
> Count 6: Unlawful possession of a weapon as a predicate felon: Sinclair,
> and
>
> Count 7: Unlawful possession of a weapon as a predicate felon: Dixon.

Thus, of the seven counts, two charged both Dixon and Sinclair relating to a drug conspiracy, three charged Sinclair alone as to a jewelry store robbery, and both Sinclair and Dixon were individually charged with being felons in possession.

The crack cocaine possession counts related to a stop on a street in the Bronx where the police searched the Defendant (among others) and found drugs on his person.

B. Severance of Defendant Dixon From That of Defendant Sinclair Should be Granted

Rule 8(b) of the F.R. Crim. P. provides as follows:[2]

> **(b) JOINDER OF DEFENDANTS.** Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Rule 14 of the F.R. Crim. P. provides as follows:

> **Relief from Prejudicial Joinder.**
> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by

---

[2]

> Rule 8(a) of the Federal Rules of Criminal Procedure governs the joinder of offenses, whereas Rule 8(b) governs the joinder of defendants. Where, as here, the joinder involves both multiple offenses and multiple defendants, Rule 8(b) must be applied. *United States v. Turoff,* 853 F.2d 1037, 1043 (2d Cir. 1988). The Rule requires an allegation that the defendants "have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b). We read this to mean that the acts must be "unified by some substantial identity of facts or participants," or "arise out of a common plan or scheme," . . .

*United States v. Attanasio*, 870 F.2d 809, 814-15 (2d Cir. 1989). Citations omitted.

In accord see also *United States v. Stewart*, 433 F.3d 273, 314 (2d Cir. 2006); *United States v. Catapano*, 2008 WL 2222013 at *16 (E.D.N.Y. 2008) (Gold, USMJ); *United States v. Chalmers*, 474 F. Supp.2d 555, 570 (S.D.N.Y. 2007).

such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

The purpose of Rule 14 is to provide a procedure whereby the issue of possible prejudice can be resolved by a motion for severance. The problem that presents itself in its most egregious form is where two or more defendants are poised to present mutually antagonistic defenses or evidence to be presented as part and parcel of the prosecution of one defendant substantially prejudices the interests of the joined defendant. See *Schaffer v. United States*, 362 U.S. 511, 516 (1960). Certainly there is a preference in the federal system for having defendants jointly indicted to be jointly tried. *United States v. Hernandez*, 85 F.3d 1023, 1029 (2d Cir. 1996). The efficiencies are obvious (see generally *Richardson v. Marsh*, 481 U.S. 200 (1987)): they avoid requiring the government to have to present the same evidence twice, and it avoids the scandal and inequity of different verdicts arising from the same fact pattern. *Ibid*. See generally *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991); *United States v. Castro*, 813 F.2d 571 (2d Cir. 1987).

The controlling case in this area is *Zafiro v. United States*, 506 U.S. 534 (1993), where the high Court refused to issue a blanket rule forbidding joint trials even in the circumstances of mutually antagonistic defenses.

> Mutually antagonistic defenses are not prejudicial *per se*. Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.

506 U.S. at 538-39.

The Court continued as follows:

> We believe that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a co-defendant. . . . When the risk of prejudice is high a district court is more likely to determine that separate trials are necessary, . . .

506 U.S. at 539.

And, of course, the fact that evidence may be admitted against one defendant, but not against the other, too, does not automatically require a severance. *United States v. Rittweger*, 524 F.3d 171, 179 (2d Cir. 2008).

The Circuit has determined that joinder under Rule 8 will be tested where the separate criminal acts of the individual defendants are so inter-connected by persons, time, and circumstances as to be part and parcel of the same plan or scheme. *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990). As the Court of Appeals, in a recent decision put it, the district court should

> apply a "commonsense rule" to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants resulting from the joinder.

*United States v. Shellef*, 507 F.3d 82, 98 (2d Cir. 2007).

In accord see *United States v. Mancuso*, 2008 WL 2884397 at *6 (E.D.N.Y. 2008) (Garaufis, USDJ).

Nevertheless, severance is not precluded under any and all circumstances. What the Court did was raise the bar to a high level, but one that is not insurmountable, and that

can be attained on the right showing by the aggrieved party. *United States v. Haynes*, 16 F.3d 29 (2d Cir. 1994).**³**

The actual granting or denial of a motion for severance is one "committed to the sound discretion of the trial judge." *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989), *cert. denied* 493 U.S. 1081 (1990); *United States v. Chang An-Lo*, 851 F.2d 547, 556 (2d Cir. 1988). Denial of a Rule 14 motion for a severance will be overturned "[o]nly if a defendant can show prejudice so severe that his conviction constituted a miscarriage of justice, and that the denial of his motion constituted an abuse of discretion." *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993), *cert. denied* 511 U.S. 1042 (1994). In accord see *Rittweger*, *supra*, 524 F.3d at 179; *United States v. Losada*, 674 F.2d 167, 171 (2d Cir. 1982). *Casamento*, a guidepost in this area,**⁴** set up a standard of "substantial prejudice" in the event the motion for severance is denied.

> If the denial of the motion causes some prejudice, but less than substantial prejudice, we are not apt to reverse, since, by and large, joinder promotes judicial efficiency.

*Casamento*, *supra*, 887 F.2d at 1150.

See also *re* "substantial" versus "some" prejudice standard: *United States v. Rahman, supra*, 189 F.3d at 122 ("prejudice"); *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998), *cert. denied sub nom Abouhalima v. United States,* 525 U.S. 1112 (1999); *United

---

**³** Pre-*Zafiro* law in this Circuit was that separate trials are required only in the event that the jury, in order to believe the testimony and evidence offered on behalf of one defendant, must completely disbelieve the evidence presented on behalf of the other defendant. *United States v. Potamitis*, 739 F.2d 784, 790 (2d Cir.), *cert. denied* 469 U.S. 934 (1984). In accord see *United States v. Rea*, 958 F.2d 1206, 1224 (2d Cir. 1992); *United States v. Gonzalez*, 698 F. Supp. 531, 534 (S.D.N.Y. 1988).

**⁴** See also *United States v. Rahman*, 189 F.3d 88, 122 (2d Cir. 1999), *cert. denied* 528 U.S. 1094 (2000); *United States v. Diaz*, 176 F.3d 52, 102 (2d Cir.), *cert. denied sub nom. Rivera v. United States*, 528 U.S. 875 (1999).

*States v. Scarpa*, 913 F.2d 993, 1014 (2d Cir. 1990); *United States v. Johnson*, 21 F. Supp.2d 329, 340 (S.D.N.Y. 1998); *United States v. Reinhold*, 20 F. Supp.2d 541, 555-58 (S.D.N.Y. 1998).  In accord see *United States v. Diaz, supra* (requirement that accused demonstrate prejudice "so severe that his conviction constituted a mis-carriage of justice", 176 F.3d at 102.).  In *United States v. Yousef*, 327 F.3d 56 (2d Cir.), *cert. denied* — U.S. — (2003), the Circuit held that, in the face of otherwise admissible overwhelming evidence of guilt, a severance was not merited.  *Id*. at 150-51.  In accord see *United States v. Wu*, 2005 WL 176624 at **2 (2d Cir. 2005), relying upon *Yousef*, *supra*.

Severance here is sought on the basis of the undue spillover prejudice that the Defendant Dixon will suffer as a result of his being tried jointly with the above named co-defendant.  It is the position of the Defendant that in the hearts and minds of the jury he will be lumped together with his co-defendant and thereby highly prejudice by any spillover effect.  See generally *United States v. Figueroa*, 976 F.2d 1446 (1st Cir. 1992).

In *United States v. Carson*, 702 F.2d 351 (2d Cir.), *cert. denied sub nom. Mont v. United States*, 462 U.S. 1108 (1983), the Circuit set forth the currently accepted standard regarding spillover effect, *viz*.,

> There is no question that Thomas played a less prominent role in the conspiracy than many of his co-defendants.  However, differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials. . . .  Moreover, the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance.

*Id*. at 366-67.  Citation omitted.

In accord see *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003); *United States v. Souza*, 2008 WL 753736 at *9 (E.D.N.Y. 2008) (Townes, USDJ).

In the case at bar the Grand Jury for the Southern District of New York returned its superseding indictment. S1 07-cr-01160. This indictment contained seven separate counts. Of these seven, two contained charges against both Defendant Dixon and Defendant Sinclair. Both of these related to charges involving the possession with intent to distribute fifty grams or more of "crack" cocaine. Count seven was a charge against Defendant Dixon as a felon in possession under 18 U.S.C. § 922(g)(1).

The problem lie in the counts that charged solely Defendant Sinclair. Three of these counts involved charges relating to an attempted jewelry store robbery in the Bronx in which a firearm was utilized. These were charges under 18 U.S.C. §§ 1951, and 924(c)(1). The final charge was a separate felon in possession count against Defendant Sinclair.

The jewelry store charges are completely separate and distinct from the charges dealing with the crack possession. There is nothing in the record that indicates that in any way, shape or form the two events are related, save for the fact that Defendant Sinclair is charged in the counts that involve both incidents.

Joinder, merely because the parties are the same is an insufficient reason, especially if one set of charges have the potential to unfairly prejudice the jury. See *United States v. Gallo*, 668 F. Supp. 736 (E.D.N.Y. 1987). There the court granted the defendants motion for severance based upon the fact that serious violent crimes separate the subject

defendants.  *Id*. at 750-51.[5]  In accord see *United States v. Gentile*, 60 F.R.D. 686, 689 (S.D.N.Y. 1973) (severance granted where "there is nothing in the indictment which shows that either Lucadana or LaPonzina acted in concert with each other, that they participated in a common scheme or plan, or that either of them participated in Gentile's activities concerning his own tax problems."); *United States v. Claytor*, 52 F.R.D. 360, 362 (S.D.N.Y. 1971); *United States v. Charnay*, 211 F. Supp. 904 (S.D.N.Y. 1960) ("It is not the identity of offenses which governs, but that the defendants participated in the same series of acts or transactions."  *Id*. at 906.).  *Cf., United States v. Santiago*, 174 F. Supp.2d 16 (S.D.N.Y. 2001) ("While none of these factors is dispositive, each is intended to provide guidance as to whether a jury will be capable of considering the evidence as to each defendant separately, independent of evidence against co-defendants."  *Id*. at 22.).  Compare *United States v. Sugar*, 606 F. Supp. 1134 (S.D.N.Y. 1985) (motion for severance denied where "[e]ach defendant is involved in substantially all of the offenses charged."  *Id*. at 1147.).

In making its determination under a Rule 8 challenge to joinder,

---

[5] Judge Weinstein listed the factors to be considered as follows,
> Among the factors the court must consider in determining whether the prejudice of a joint trial rises to the level of a "miscarriage of justice" are the following: [1] the number of defendants and the number of counts; [2] the complexity of the indictment; [3] the estimated length of the trial; [4] disparities in the amount or type of proof offered against the defendants; [5] disparities in the degrees of involvement by defendants in the overall scheme; [6] possible conflict between various defense theories or trial strategies; and, <u>especially, [7] prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant.</u>

*Id*. at 749.  Emphasis added.  Note the priority that Judge Wesinstein gave the last factor in using the word "especially".

> the pivotal question on this motion is whether the indictment alleges that defendants have participated in the "same series of acts or transactions constituting an offense or offenses." The fact that all defendants are not named in every Count is of no matter so long as it appears that the offenses charged arise out of a series of acts or transactions in which all defendants participated.

*United States v. Ostrer*, 460 F. Supp. 1388, 1390 (S.D.N.Y. 1984). Citation omitted.

If the offenses charged and the parties in the indictment are not part and parcel of the same series of events, acts or transactions then joinder will be denied. In *Rittweger*, *supra*, the Circuit applied a broad based rule permitting joinder, but limiting it to circumstances where the separate conspiracies have a common purpose or goal, *viz*.,

> members of two or more conspiracies may be joined as defendants even where the members have not been charged as participating in one overarching conspiracy. *See, e.g.,* [*United States v.*] *Attanasion*, [870 F.2d 809] at 815 [(2d Cir. 1989)], (upholding joinder of defendants involved in separate conspiracies on the grounds that the conspiracies shared a common purpose and there was "an overlap of participants and acts").

524 F.3d at 176-77.

In the case at bar, as set forth *supra*, the jewelry store robbery counts have nothing to do with Defendant Dixon. The only common denominator is Mr. Sinclair. As the jewelry store counts involve violent conduct (a robbery with a firearm) the prejudice to Mr. Dixon is obvious. Severance here is merited under Rule 14, and should be granted by this Court.

C. Suppression of the Firearm Seized By the Police Should be Granted

It is the Defendant-Movant's position, before this Court, that the police unlawfully searched his residence and seized the firearm. Hence, it should be suppressed.

According to the sworn statement of Police Officer Barbot, the police knocked on the door of the Defendant's residence and were greeted by the Defendant's mother, who also lived there. Asking permission to search the home, she granted it, and the gun was found under a bedroom mattress. See Affidavit of Officer Barbot accompanying 07-mag-2021.

It is the position of the Defendant, as set forth in the accompanying affidavit in support of the motion, that his mother did not give the police said permission, and they searched the apartment without consent, and in the absence of a warrant.

A search of one's home by governmental authority, in the absence of a validly issued warrant, is considered *per se* unreasonable, and the fruits of such a search must be suppressed. *Payton v. New York*, 445 U.S. 573, 586 (1980). One established exception to this rule is where the police receive the consent to search by a household member, with the authority, intelligence, and maturity to give such permission. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). Such consent, needless to say, must be given voluntarily and knowingly, in the absence of any threat or duress. *Schneckloth v. Bustamonte*, 412 U.S. 218, 224-25 (1973).

D. Suppression of the Narcotics Seized By the Police Should be Granted

The Fourth Amendment states, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Amend. IV, U.S. Const. Under the exclusionary rule, as applicable in federal prosecutions, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal

search and seizure. *Weeks v. United States,* 232 U.S. 383, 398 (1914). In accord *see also Mapp v. Ohio,* 367 U.S. 643, 649 (1961). This prohibition applies as well to the fruits of the illegally seized evidence. *Wong Sun v. United States,* 371 U.S. 471, 486 (1963); *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392 (1920).

Any search that is conducted outside the judicial process — *i.e.*, in the absence of a search warrant — is *per se* unreasonable under the Fourth Amendment. *Katz v. United States*, 389 U.S. 347, 357 (1967). And, any physical evidence seized as a result of such a search must be excluded from trial. *Wong Sun*, *supra*, 371 U.S. at 487-88.

Nevertheless, there are circumstances under which the police may intrude a person, in the absence of the issuance of a warrant, that does not implicate a violation of the Fourth Amendment. This Circuit has recognized that there are three levels of inter-action between the police and civilians:

1. Consensual encounters;
2. Investigative stops; and
3. Arrests.

*United States v. Terhani*, 49 F.3d 54, 58 (2d Cir. 1995); *United States v. Hooper,* 935 F.2d 484, 490 (2d Cir.), *cert. denied* 502 U.S. 1015 (1991).

In the case of a "consensual encounter", the police require no justification for their inquiry as long as compliance with said inquiry is entirely voluntary on the civilian's part. *Florida v. Bostick,* 501 U.S. 429, 435 (1991); *United States v. Stone*, 2000 WL 1341455 at **3 (2d Cir. 2000); *United States v. Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992).

In the case of an "investigative stop", or more commonly called a *Terry*-stop, the police "must have a reasonable suspicion that the defendant has committed a crime, or will do so imminently." *United States v. Sokolow,* 490 U.S. 1, 7 (1989); *United States v. Villegas,* 928 F.2d 512, 516 (2d Cir.), *cert. denied* 502 U.S. 843 (1991).  See generally *Terry v. Ohio,* 392 U.S. 1 (1968).  In such circumstances, the degree of "suspicion" has been held to that of even less than a preponderance of the evidence.  *United States v. Lawes*, 292 F.3d 123, 127 (2d Cir. 2002); *United States v. Gilbert*, 1998 WL 807768 at \*\*1 (2d Cir. 1998).

In the case of an arrest and subsequent seizure, the Fourth Amendment requires that there exist a "reasonable probability" or a "substantial chance" that the accused has engaged in criminal activity.  *United States v. Bakhtiar*, 913 F.2d 1053, 1062 (2d Cir. 1990), *cert. denied* 499 U.S. 924 (1991).  Such belief on the officer's part requires "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir. 2000).  While absolute certainty on the officer's part is not required (*Illinois v. Rodriguez, supra*, 497 U.S. at 195 (Marshall, J., dissenting op.); *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)), a commonsense standard (see *Texas v. Brown*, 460 U.S. 730, 742 (1983); *United States v. Cortez,* 449 U.S. 411, 418 (1981)) based upon the totality of the circumstances will be the deciding factor to be utilized by the courts.  *Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002).  As defined by this Circuit,

> In general, probable cause to arrest exists when the officers have know-
> ledge or reasonably trustworthy information of facts and circumstances

>that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.

*Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996), citing *Dunaway v. New York,* 442 U.S. 200, 208 n. 9 (1979).

As applied to the facts of this case, as set forth in Defendant Dixon's attached affidavit, he acknowledges that he was, in fact, in possession of the narcotics. However, to an objective observer his conduct was completely innocent. Neither he, nor any of the persons with whom he was seen by the police, were engaging in any conduct that would be considered suspicious enough to merit a *Terry*-stop.

The district court, in its analysis of the facts, must rely upon the standard enunciated by the Circuit in *United States v. Vargas*, 369 F.3d 98, 101 (2d Cir. 2004), *viz.*,

>In determining whether an investigatory stop is sufficiently intrusive to ripen into a *de facto* arrest, the Second Circuit considers the "amount of force used by the police, the need for such force, and the extent to which an individual's freedom of movement was restrained, and in particular such factors as the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used." *United States v. Perea,* 986 F.2d 633, 645 (2d Cir.1993) (internal quotation marks and citations omitted).

In accord see *Oliveira v. Mayer*, 23 F.3d 642, 645 (2d Cir. 1994); *United States v. Forte*, 412 F. Supp.2d 258, 264-65 (W.D.N.Y. 2006); *United States v. Redick*, 2006 WL 908153 at *5 (D. Conn. 2006).

As the courts have made clear the issue comes down to one of "the degree of intrusion, the amount of force used, and the extent to which [the arrestee's] freedom of movement was curtailed." *United States v. Ceballos*, 654 F.2d 177, 184 (2d Cir. 1981).

Upon information and belief, Mr. Dixon was in the street with several other individuals. They were not engaging in any conduct that, to the casual observer, would appear unlawful or raise any suspicions. Thus, for the police to have stopped him and the others with him, and then search them all, under Terry, was impermissible. Hence, the seized narcotics must be suppressed as the fruits of an unlawful search and seizure.

E. Suppression of the Statement Made to the Police Should be Granted

At the time of the Defendant's arrest, he was given a *Miranda* waiver form which he executed. After executing this document he made the following statement to the police:

> The gun that was found in my house at 741 St Owen St is mines [sic]. My mother did not know I had the gun. I had the gun for protection because we just moved in the area and I was scared.

It is averred herein that the police coerced the inculpatory statements from Defendant Dixon by making improper threats and promises and through the use of excessive force to improperly induce him to make the subject statements. As such, the statements of the defendant to the police must be suppressed.

It is axiomatic that an accused's confession is admissible only if that confession is made voluntarily. *Green v. Scully*, 850 F.2d 894, 900 (2d Cir.), *cert. denied* 488 U.S. 945 (1988). When a confession is secured as a result of government coercion (see *United States v. Solomon*, 509 F.2d 863, 871-72 (2d Cir. 1975) (confession only excludable if improper inducement is made by a person in authority)) it is inadmissible as violative of the defendant's Fifth Amendment right. *Colorado v. Connelly*, 479 U.S. 157 (1986) (confession by schizophrenic who heard voices telling him to confess admissible as there was no evidence of police coercion; *id*. at 165.).

In determining the admissibility of a confession, admission or other inculpatory statement the question in each and every case is whether the accused's will was over-borne by the actions of the police at the time the statement was made. *Watts v. Indiana*, 338 U.S. 49, 52-53 (1969); *Leyra v. Denno*, 347 U.S. 556, 558 (1954); *Chambers v. Florida*, 309 U.S. 227 (1940). Under such circumstances, the inculpatory statement cannot be deemed to be "the product of a rational intellect and a free will." *Blackburn v. Alabama*, 361 U.S. 199, 208 (1959). See also *Spano v. New York*, 360 U.S. 315, 322-23 (1959); *Harris v. South Carolina*, 338 U.S. 68, 70 (1949); *Ashcraft v. Tennessee*, 322 U.S. 143 (1944). As this Circuit has put it:

> The purpose of the *Miranda* warning is to ensure that the person in custody has sufficient knowledge of his or her constitutional rights relating to the interrogation and that any waiver of such rights is knowing, intelligent, and voluntary.

*United States v. Banner*, 356 F.3d 478, 480 (2d Cir. 2004).

Statements given by a defendant to the police must be rendered inadmissible where they were the product of coercion, no matter whether it be physical or psychological. *Miller v. Fenton*, 796 F.2d 598, 602-03 (3d Cir. 1986). As the Second Circuit put it,

> [O]nly those statements a suspect makes "in the unfettered exercise of his own will" may be used against him, *Malloy v. Hogan*, 378 U.S. 1, 8 (1964), and a confession is voluntary only when it is "truly . . . the product of his free choice." *Miranda*, 384 U.S. at 458.

*Green v. Scully*, *supra*, 850 F.2d at 900.

In making this determination, the reviewing court is duty-bound to inquire: "Is the confession the product of an essentially free and un-constrained choice by its maker?" *Schneckloth v. Bustamonte, supra*, 412 U.S. at 225; *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). This inquiry is achieved by an examination of the totality of the

circumstances surrounding the challenged statement. *Fare v. Michael C.*, 442 U.S. 707, 726 (1979); *Mincey v. Arizona*, 437 U.S. 385, 401 (1978); *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991); *Green v. Scully*, *supra*, 850 F.2d at 901. *Compare United States v. Bye*, 919 F.2d 6, 9 (2d Cir. 1990) (failure of district court to "engag[e] in the required comprehensive inquiry" mandates remand to district court for further proceedings). Relevant circumstances include, but are not limited to, the conduct of the law enforcement officers, the conditions under which then interrogation took place, and the background of the accused. *United States v. Valdez*, 16 F.3d 1324, 1329 (2d Cir.), *cert. denied* 513 U.S. 810 (1994); *United States v. Mast*, 735 F.2d 745, 749 (2d Cir. 1984); *United States v. Major*, 912 F. Supp. 90, 95 (S.D.N.Y. 1996).

Instructive is the high Court's decision in *Lynumn v. Illinois*, 372 U.S. 528 (1963). In that case the defendant was arrested, in her home, on charges of selling marijuana to a police informant. Confronting her in her home with their accusations, the defendant was told by the police that unless she admitted to the sale and revealed her narcotics supplier she "could get 10 years and [her] children could be taken away [from her] . . . and strangers would have them. . ." 372 U.S. at 531. Furthermore, she was told that her welfare payments would be terminated. *Ibid*. Being unfamiliar with the law, and having no idea as to whether the threats of the police would turn out so, the defendant made certain admissions.

In reversing the conviction, the High Court, in an opinion by Mr. Justice Stewart, held that the proffered statement must be suppressed. The totality of the circumstances, as a standard to be applied herein — the defendant's unfamiliarity with the judicial system,

the presence of several police officers, the fear she had of losing her children, her freedom, and her financial support[6] — all worked to render the statement the product of an impermissibly "impellingly coercive" situation. *Id*. at 534-35.

As *Lynumn* has been applied (especially in light of the Supreme Court's subsequent holding in *Miranda*), the use of deceit or misrepresentation of the law and facts, and use of threats, to elicit an inculpatory statement will render it in-admissible, provided the impact was to figuratively "browbeat [the] defendant into making a statement." *Anderson*, *supra*, 929 F.2d at 97.  For example, in *Anderson*, *supra*, the Second Circuit upheld the suppression of a post-*Miranda* statement elicited as a result of the DEA agent's telling the accused that if he asserted his right to counsel "it would permanently preclude him from cooperating with the police." *Id*. at 98.  Similarly, in *United States v. Ruggles*, 70 F.3d 262 (2d Cir. 1995), *cert. denied* 516 U.S. 1182 (1996), the Second Circuit upheld the admissibility of statements made to ATF agents in part based upon the fact that the defendant had an extensive background of exposure to the criminal justice system and was "familiar with police questioning." *Id*. at 265.  See also *United States v. Berkovich*, 932 F. Supp. 582 (S.D.N.Y. 1996), where the court upheld the admissibility of a statement preceded by a representation by the FBI that cooperation could lead to leniency in sentencing.  The District Court (Koeltl, J.) ruled that absent evidence indicating that the FBI agents made mis-statements to the defendant "based on unfillable or other promises [that] might perhaps overbear a defendant's will," the confession would be deemed voluntary. *Id*. at 587.  In accord see *United States v. R.W. Prof'l Leasing*

---

[6] *Arizona v. Fulminante*, 499 U.S. 279, 186 (1991); *Zappulla v. New York*, 391 F.3d 462, 474-75 (2d Cir. 2004).

*Svces. Corp.*, 317 F. Supp.2d 167, 174 (E.D.N.Y. 2004) ("Promises of leniency, without more, do not invalidate a *Miranda* waiver. [Citation omitted.] Although material misrepresentations based on unfulfillable or other improper promises might overbear a defendant's will." *Id*. at 174.) However, any such inducement, innocent or otherwise will be vitiated if made <u>after</u> the accused has received his *Miranda* warnings. See *United States v. Morrill*, 1998 WL 135819 at *2 (W.D.N.Y. 1998).

In the case at bar the Defendant was told by the police that, in the absence of a statement, his mother and younger brother would also be charged with unlawful possession of a firearm. This vitiated the voluntariness of any statement he made, and, therefore, makes its suppression necessary.

WHEREFORE, Movant respectfully preys that this Court grant the Motion of the Defendant DIXON and sever his trial from that of the aforementioned co-defendant, and suppress his statement.

                                            Respectfully submitted,

                                          /s/ *Jeremy F. Orden*
                                          Jeremy F. Orden, Esq.
                                          Attorney for Defendant DIXON

Dated:   Aug. 19, 2008
           New York, NY

**Certificate of Service**

I am Jeremy Orden, Esq., attorney of record for the named Defendant herein, Ashley Dixon. Under the pains and penalty of perjury, I do affirm that on the 19th day of August 2008, I did serve a copy of the annexed Notice of Motion and Supporting pleadings on Howard Master, Esq., attorney for the United States of America, by depositing, in an official depository of the U.S. Postal Service, said pleadings for delivery, in a pre-paid first class postage envelope, addressed to Howard Master, Esq., Assistant U.S. Attorney, Southern District of New York, at 1 St. Andrews Plaza, NY, NY 10007, the address designated for said service.

/s/ *Jeremy F. Orden*
Jeremy F. Orden, Esq.

Dated: Aug. 19, 2008
    New York, NY